## DONALDSON BOND & STOCK COMPANY, Appellant, v. LOUIS HOUCK.

### Division One, July 3, 1908.

1. **LAW CASE: Issues of Fact.** Where a jury is waived in a law case and the issues of fact are submitted to the court, all presumptions on appeal are in favor of the correctness of the findings of the court upon the questions of fact involved.

2. ———: ———: **Individual or Corporation.** Notwithstanding defendant in his letters to plaintiff concerning the building of a railroad and the sale of bonds and stock, the money to be used in the construction of the road and a part of the bonds and stock to be given to plaintiff as his compensation for finding a purchaser therefor, often used the words "I" and "my railroad," etc., yet if there are facts to justify the trial court in finding that defendant never intended to contract with plaintiff in his individual capacity, but on the contrary that in all the correspondence leading up to the final contract between the plaintiff brokerage company and the railroad company organized as a result of their negotiations and in developing their scheme for building the railroad there was an implied term that plaintiff and defendant, in their final developed plan, would deal with each other as corporations, this court will not interfere with the finding of the trial court that the bonds and stock promised plaintiff as a bonus for its services as a broker were bonds and stock to be furnished by defendant's railroad company and not by him as an individual.

3. ———: ———: ———: **Novation.** Where what was done by the parties to a contract, was not to introduce or substitute a new party, a railroad corporation for the principal owner of its stock, but was the very agreement itself contemplated by the principal persons conducting the negotiations, the doctrine of novation does not apply. Where plaintiff brokerage company, looking forward to a contract which all the correspondence and

surrounding facts indicate it had in contemplation, accepted a contract which narrated, not that defendant in his individual capacity, but that the railroad company which was to be organized to construct a railroad along a defined route and which was organized in pursuance of the scheme originally outlined by defendant and plaintiff and which began to construct the road in pursuance to the outlined plan, and further narrated that the railroad company, and not defendant in his individual capacity, needed money to construct that road, and that the railroad company, and not defendant, had authorized plaintiff to sell the railroad company's bonds and to have as a compensation for making the sale ten per cent of the whole amount of bonds issued, and which further narrated that plaintiff had carried out that very contract of sale and had fulfilled its obligations thereunder and was entitled to compensation as it set forth, it cannot be held that the contract was a mere order for bonds, or the attempted substitution of a contract between plaintiff and the railroad company in lieu of an already binding and existing contract between plaintiff and defendant as an individual, but the contract evidenced those matters deemed vital by the contracting parties and merged into itself all prior negotiations, and the doctrine of novation does not apply.

4. ——: ——: ——: **Appellate Practice: Obiter Matter.** It is not proper to determine a point not necessary to a decision of the case. Where defendant was not bound in his individual capacity under the contract, it is not necessary to determine whether or not the railroad company which defendant organized and controlled is, because of indifference and neglect, liable for a failure to consummate the building of the railroad after the trust company failed in its agreement to purchase the bonds as the contract recited it had done, the contract further reciting that ten per cent of the bonds were to go to plaintiff as compensation for finding a purchaser for the balance, and he sues the individual defendant only for those bonds.

5. **SALE: Agent's Compensation: Procuring Purchaser: Refusing Instruction: No Evidence.** Where there was no evidence of any probative force that plaintiff was the procuring cause in finding a buyer for defendant's railroads, it is not an error for the trial court to refuse an instruction to the effect that if defendant employed plaintiff to find for him a purchaser for his system of railroads and promised plaintiff a reasonable compensation if it would do so, and thereafter plaintiff disclosed to defendant the names of two persons likely to buy said railroads and opened negotiations with them for the

purchase of the roads, and shortly thereafter in consequence of such disclosures and negotiations defendant was enabled to sell and did sell his said roads to said persons, etc., then plaintiff is entitled to recover reasonable compensation, etc. Where said persons were not the purchaser, but one of them became a member of the syndicate which did purchase, testimony showing that plaintiff knew nothing of the formation of that syndicate is an impassable obstacle to plaintiff's recovery.

6. ———: ———: **Evidence of Value.** Where defendant was not liable to plaintiff as his agent in procuring a purchaser for his railroads, the exclusion of evidence going to the measure of damages is not error.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. W. Foster,* Judge.

AFFIRMED.

*T. K. Skinker* and *Wm. R. Donaldson, Jr.,* for appellant.

(1) (a) The evidence shows without contradiction that defendant promised to pay plaintiff $25,000 in bonds and $50,000 in stock of a railroad company to be organized by him to build a line of railroad between Cape Girardeau and Perryville in Missouri, if plaintiff would place the bonds of the company at eighty cents on the dollar, so as to enable defendant to build the road, and that plaintiff accepted the offer by placing the bonds. This constituted an executed contract between plaintiff and defendant. It is this contract on which plaintiff sues in the first count. The court found that there was no contract and therein committed error. (b) It is immaterial that plaintiff did not in writing accept defendant's offer and agree to render the service. Lindell v. Rokes, 60 Mo. 249; Allen v. Chouteau, 102 Mo. 323; Lancaster v. Elliott, 28 Mo. App. 86; Underwood Typewriter Co. v. Realty Co., 118 Mo. App. 197; Laclede Construction Co. v. Tudor Iron Works, 169

Mo. 139; School District v. Sheidley, 138 Mo. 672; Koch v. Lay, 38 Mo. 147; Morse v. Bellows, 7 N. H. 549; Harris v. Stevens, 7 N. H. 464; Lent v. Padelford, 10 Mass. 230; Sharp v. Bates, 102 Md. 344; Railroad v. Scott, 72 Tex. 70; Bishop v. Eaton, 161 Mass. 496; Hooker v. Hyde, 61 Wis. 204; Hutchinson v. Railroad, 37 Wis. 601; Railroad v. Smith, 144 Mich. 235; Story on Contracts (5 Ed.), secs. 380, 390; Cummings v. Clinton County, 181 Mo. 162; Harson v. Pike, 16 Ind. 140; Baker v. Hoag, 7 Barb. 113; Ryer v. Stockwell, 14 Cal. 137; Reif v. Page, 55 Wis. 493; Bank v. Hart, 55 Ill. 62; Wilson v. McClure, 50 Ill. 366. (2) The agreement dated August 2, 1901, between plaintiff and the St. Louis, Cape Girardeau & Southern Railroad Company did not supersede the contract above shown, or release defendant from liability on it, or exonerate him from the duty of paying to plaintiff $25,000 in bonds and $50,000 in stock of the railroad company, or damages in lieu thereof. Badger Lumber Co. v. Meffert, 59 Mo. App. 437; Powell v. Charless, 34 Mo. 485; Leabo v. Goode, 67 Mo. 126; Snyder v. Kirtley, 35 Mo. 423; Appleton v. Kenyon, 19 Mo. 637; Selby v. McCullough, 26 Mo. App. 72; Jackson v. Bowles, 67 Mo. 610; Mount v. De Haven, 29 Ind. App. 127; Lane v. Collier, 46 Ga. 580; Bank v. Gardiner, 57 Mo. App. 268; Brown v. Croy, 74 Mo. App. 462; Johnson v. Weed, 9 John. 310; Noel v. Murray, 13 N. Y. 167; Tobey v. Barker, 5 John. 68; Glenn v. Smith, 2 Gill & J. 493; Puckford v. Maxwell, 6 T. R. 52; Thornberry v. Thompson, 69 Mo. 481; Pratt v. Morrow, 45 Mo. 406; Russell v. Berkstresser, 77 Mo. 426; Haubert v. Mausshardt, 89 Cal. 433; Witbeck v. Waine, 16 N. Y. 532; Chapman v. Railroad, 146 Mo. 508; Van Vliet v. Jones, 20 N. J. L. 340; Babcock v. Hawkins, 23 Vt. 561; Stamper v. Johnson, 3 Tex. 1; Taylor v. Bank, 5 Leigh 471; Brent v. Richards, 2 Grat. 539; Bowles v. Elmore, 7 Grat. 385; McDaniels v. Robinson, 26 Vt. 316; Keefer

v. Zimmerman, 22 Md. 285; Tarr v. Northey, 17 Me. 113; Daughtry v. Boothe, 2 Jones L. (N. C.) 87; Drown v. Forrest, 63 Vt. 557; Lawall v. Roder, 2 Grant's Cases, 426; American Paper Bag Co. v. Van Nortwick, 3 U. S. C. C. A. 274; Illinois Car & Equipment Company v. Linstroth Wagon Co., 112 Fed. 737; Chitty on Contracts, pp. 658, 665; 1 Beach on Modern Law of Contracts, sec. 453; In re Lemerise, 73 Vt. 304; Gerhart Realty Co. v. Northern Assurance Co., 94 Mo. App. 356; Thatcher v. Dudley, 2 Root 169; Goodrich v. Stanley, 24 Conn. 613; Hall v. Smith, 15 Iowa 584; Munford v. Wilson, 15 Mo. 540; Chrisman v. Hodges, 75 Mo. 413. (3) There was evidence tending to show that defendant employed plaintiff to find for him a purchaser of the Houck roads and the stock of the corporations owning the same; that plaintiff found the purchaser in the Fordyce-Guy-West syndicate and thereby entitled himself to compensation for the service. The court refused plaintiff's instruction predicated upon this evidence and therein committed error. Tyler v. Parr, 52 Mo. 249; Merton v. Case Co., 99 Mo. App. 630; Timberman v. Craddock, 70 Mo. 638; Lipscomb v. Cole, 81 Mo. App. 53; Campbell v. Vanstone, 73 Mo. App. 87; Crone v. Trust Co., 85 Mo. App. 607. (4) The court erred in refusing to allow evidence to be given that the bonds of the St. Louis & Gulf Railway Company received by the syndicate of which defendant was a member, were worth par. Butler v. Murphy, 106 Mo. App. 287.

*Eleneious Smith* for respondent.

(1) Where a jury is waived and the issues of fact are submitted to the court, all presumptions are in favor of the correctness of the findings of the court upon the question of fact involved. Gaines v. Fender, 82 Mo. 509; Jordan v. Davis, 172 Mo. 608; Friedman v. Kelly, 102 S. W. 1068; Johnson v. Luttman, 88 Mo.

567; Bozarth v. Legion of Honor, 93 Mo. App. 564; Meyer v. Ins. Co., 73 Mo. App. 166. (2) In an action at law tried by the court sitting as a jury, the action of the court upon declarations of law is important only as indicating the theory on which the case was tried. Baumhoff v. Railroad, 171 Mo. 120; Dollarhide v. Mabarry, 125 Mo. 197; Suddarth v. Robertson, 118 Mo. 286; Crescent Planing Mill Co. v. Spilker, 77 Mo. App. 409.

LAMM, J.—Plaintiff is a domestic corporation doing business in St. Louis as a buyer and seller of bonds, stock and other securities, to-wit, a broker. Defendant is a railroad builder and promoter living in Cape Girardeau. This is an action to recover the aggregate sum of $175,000, for services alleged to have been rendered defendant personally in plaintiff's capacity as broker.

The petition is in two counts, as follows:

"The plaintiff states that it is a corporation organized and existing under the laws of the State of Missouri concerning business corporations, and authorized by its charter to negotiate loans of money and to sell bonds and corporate stocks; that in the year 1900 the defendant was desirous of building a railroad in the State of Missouri between the city of Cape Girardeau in the county of Cape Girardeau and the city of Perryville in the county of Perry, but defendant was without the means of building the same; that thereupon defendant proposed to plaintiff a plan whereby defendant would be enabled to build said railroad, as follows: That defendant should cause a railroad company to be organized for the purpose of building the same and should cause stock and bonds to be issued by said company, and should cause the bonds to be guaranteed by a railroad corporation organized under the laws of the State of Missouri known as the Chester,

Perryville and Ste. Genevieve Railroad Company, which company was then operating a railroad in the State of Missouri; and should cause twenty-five thousand dollars of such bonds and fifty thousand dollars of such stock to be given to the plaintiff, provided plaintiff would negotiate a sale of other bonds and stock of said company for money to be used by defendant and the company so to be organized in building said railroad. Plaintiff states that plaintiff accepted defendant's said proposal, and thereafter defendant caused a corporation to be incorporated for the purpose of building said railroad known as the St. Louis, Cape Girardeau and Southern Railroad Company; that thereupon plaintiff negotiated a sale of bonds and stock of said railroad company to the Missouri Trust Company, and procured said trust company to agree in writing to take such bonds and stock of said railroad company and to pay for them in installments as the work of constructing said railroad should progress, provided that the said company should complete said railroad on or before the first day of July, 1902; and said railroad company by the same agreement, on its part, agreed to deliver to said trust company its said bonds and stock to be so paid for, and agreed to construct its said railroad and to complete the same by the first day of July, 1902. Plaintiff states that the defendant has at all times been the controlling spirit in the enterprise of building said railroad, and has at all times managed the same through persons put into said company as its stockholders, directors and officers, by his advice and influence, and that he has at all times been the real owner of said company; and that defendant and said railroad company have not built said railroad or any part thereof, and have abandoned the scheme of building the same, and have not caused said bonds to be guaranteed by the Chester, Perryville and Ste. Genevieve Railroad Company, whereby the

bonds and stock of said St. Louis, Cape Girardeau and Southern Railroad Company have never attained any value, and that defendant has never caused any of such bonds or stock to be delivered to the plaintiff. Wherefore plaintiff says that it is damaged in the sum of seventy-five thousand dollars, for which sum, with costs, it prays judgment.

"For another and further cause of action, plaintiff states that heretofore, to-wit, in the fall of the year 1901, the defendant, being the holder, legal and equitable, of all the stock in certain railroad corporations then building, owning and operating a system of railroads in Southeast Missouri, known as the St. Louis, Kennett and Southern Railroad, the Clarkton Branch of the St. Louis, Kennett and Southern Railroad, the St. Louis, Morehouse and Southern Railroad, the Pemiscot Southern Railroad, the Chester, Perryville and Ste. Genevieve Railroad, Houck's Missouri and Arkansas Railroad, the Cape Girardeau, Bloomfield and Southern Railroad, the St. Louis, Cape Girardeau and Southern Railroad, and other railroads, all commonly called the Houck Roads, employed the plaintiff to find for him a purchaser of said railroads and the stock of the said railroad corporations, and agreed to pay plaintiff a reasonable consideration if he would find such a purchaser; that plaintiff proposed the purchase of said railroads and stock to several persons, among whom was one Samuel W. Fordyce; that said persons took up and considered said proposals and negotiated with plaintiff concerning them, and eventually the said Fordyce, in consequence of said proposals and acting upon them, concluded a negotiation with plaintiff and defendant, whereby he purchased said roads and stocks for himself and others, at a large price, to-wit, two millions of dollars and more; that defendant has refused to pay plaintiff for its service in finding for him said purchaser; that the service so rendered by plain-

tiff to defendant was reasonably worth one hundred thousand dollars. Wherefore plaintiff prays judgment against defendant for the sum of one hundred thousand dollars with its costs.''

The answer was a general denial.

The trial was without the aid of a jury. Plaintiff asked two declarations of law—the first on the first and the second on the last count. The court gave the first and refused the second. These declarations follow:

"1. The court declares the law to be that if the court shall find from the evidence that defendant planned to build a railroad between the cities of Cape Girardeau and Perryville in Missouri, through the instrumentality of a railroad company to be incorporated for that purpose and, in order to enable him to carry out his said plan, employed the plaintiff to negotiate and sell bonds and stock of the company so to be incorporated, and for services to be rendered in making such negotiation and sale agreed to pay and deliver to plaintiff $25,000 of the bonds and $50,000 of the stock of such company, and if the court shall further find that the defendant did cause a railroad company to be incorporated for said purpose by the name of the St. Louis, Cape Girardeau & Southern Railroad Company, and thereafter plaintiff did negotiate a contract with the Missouri Trust Company of St. Louis, whereby said trust company did agree to take and pay for bonds and stock of said company on terms approved by defendant; and if the court shall further find that among other things it was provided by said contract that the bonds to be issued by said railroad company should be secured by a first mortgage on all of the property of said company, and also by the guarantee of the Chester, Perryville and Ste. Genevieve Railroad Company, a corporation then owning a railroad in Missouri, and also by a second mortgage on the property of the latter com-

pany, and that the money should be paid by said trust company for said bonds as sections of five miles of the road of said St. Louis, Cape Girardeau and Southern Railroad Company should be built, and that the whole of said road should be completed by the first day of July, 1902; and if the court shall further find that said railroad was not completed and no section thereof was built by the first day of July, 1902, and that said St. Louis, Cape Girardeau and Southern Railroad Company has abandoned the construction of said road, and that none of said bonds or stock have ever been paid or delivered to the plaintiff—then the court will find for the plaintiff and will assess his damages at such sum as the court may believe from the evidence the bonds and stock the plaintiff was to have received would have been worth in the market when they should have been delivered to him.

"2. The court declares the law to be that if the court shall find from the evidence that defendant employed plaintiff to find for him a purchaser for a system of railroads in Southeast Missouri, known as the Houck roads, and promised to pay plaintiff a reasonable compensation for such service; that thereafter plaintiff disclosed to defendant the names of Fordyce and Guy as persons likely to buy said roads and opened negotiations with Fordyce for the sale of said roads, and shortly thereafter in consequence of such disclosures and negotiations defendant was enabled to sell and did sell his said roads, or an interest in them, to said Fordyce, Guy and their associates, then the court will find for the plaintiff, and will assess its damages at such sum as will be reasonable compensation to it for the service so rendered."

The judgment was for defendant on both counts, and plaintiff appeals. The motion for a new trial assigned for grounds (now pressed) the following:

"1. That the finding of the court was against the evidence, and against the weight of the evidence and against the law under the evidence.

"2. That the court erred in refusing to give the plaintiff's second declaration of law.

"3. That the court erred in excluding evidence offered by the plaintiff."

Any fact vital to a just determination of errors assigned will appear in the opinion. Counsel in their briefs have treated the case as naturally dividing itself into two parts—the *first* relating to the first count, the *second* to the last. We shall preserve that line of demarcation.

I. It will be seen that the trial court agreed with plaintiff's counsel on the law applicable to the first count, if the facts therein hypothecated were found to exist. Evidently, the court found the facts against plaintiff, otherwise judgment would have gone in its favor.

There are two main propositions plaintiff must maintain in order to convict the trial court of error in its finding on the first count, viz.: (1) It must show it contracted (to the effect stated in that count) with defendant individually; and (2) it must show it performed the contract. If there was substantial evidence tending to show either of these propositions not true, plaintiff must be cast.

In determining either, we must be guided by the stiff rule of law thus aptly formulated by defendant's counsel: "Where a jury is waived and the issues of fact are submitted to the court, all presumptions are in favor of the correctness of the findings of the court upon the questions of fact involved."

In Hamilton v. Boggess, 63 Mo. l. c. 251, *et seq.*, NAPTON, J., said: "When a case is submitted to a court and a jury dispensed with, the facts upon which the court bases its judgment are incontrovertible here.

This court has only the power to review the law declared by the court below, and when that court is entrusted with both the facts and the law, we must assume the facts to be as that court finds them,'' Judge Napton adding that he made the observation because ''we wish it to be understood that it is not our province to determine facts, or review the findings of juries or courts on them, except in chancery cases.''

Keeping that proposition constantly in mind as a guiding pole star, we come to the first proposition discussed by plaintiff's counsel, viz.: That a contract, as alleged in the first count, was made individually with defendant.

(a) To maintain that proposition great reliance is put on the phrasing of many letters from defendant during the years 1900-1-2. Later a formal written contract relating to the same subject-matter was made between plaintiff and a certain railroad corporation, to be noticed further along. Defendant's counsel insists said formal written contract was the only contract and that defendant was no party to it. Plaintiff's counsel, *per contra,* insist that such written contract was a mere order for bonds. Their theory is that defendant's position on the written contract is merely invoking the doctrine of novation—a doctrine (they say) inapplicable under the facts of this case. They say the real contract is evidence by the antecedent letters.

Attending, then, to the letters we shall not encumber this opinion with them for they are many and some of them are voluminous in detail. To understand them an outline of the situation surrounding the writers and their relation to each other is necessary. Letters intended to be private not infrequently change their whole character when made public and when a third person attempts to interpret doubts and ambiguities, unless unmentioned details serving to give the right

meaning to the words (and which details are under-
stood by the addressee), are supplied. "The relation
between two persons forms a key to their correspond-
ence for which nothing else can be substituted." [Lie-
ber's Hermeneutics, p. 145; Evans v. Evans, 196 Mo.
l. c. 20, *et seq.*]

In brief, the situation surrounding, and the rela-
tions between Donaldson, president of the plaintiff
corporation, and defendant were these:

In past years, from time to time, defendant had
caused to be organized a group of allied railroad cor-
porations in Southeast Missouri and, as a contractor,
had built a half-dozen short lines (aggregating 200
miles or so) for such corporations, forming a gridiron
on the map of Southeastern Missouri. He had taken
his pay in bonds and stocks. Through the ownership
of a majority of the stock he was the controlling and
moving spirit in these enterprises. Through Donaldson
as president of plaintiff brokerage company he had
negotiated such bonds in St. Louis. Hard times had
depressed these enterprises. Rival lines were threat-
ened. We infer some of the bonds had been hypothe-
cated as collateral for loans then pressing payment.
The situation was such that the future of the bonds
already sold and others about to be issued (or issued
and hawked on the market) for the completion of lines
already building was somewhat uncertain. At the times
in hand defendant is shown to have been in sharp
financial straits. We pause to point out that this very
fact is not without significance in determining the
question whether plaintiff was relying on Mr. Houck's
personal obligation at the outset. Be that as it may,
the correspondence covered the whole situation. It
pointed to the sale of some of the foregoing bonds.
It pointed to a general scheme of sustaining the value
of the bonds secured on the roads then built and being
completed, in all of which plaintiff as a broker had

a live interest to protect its customers who had bought them. In this condition of things, in letters dealing with the general situation outlined above, defendant introduced into the correspondence the idea of connecting the "lower system," of what may be called the "Houck Railroads," with the "upper system" by building a line of a few miles (say 45) from Cape Girardeau north to Perryville, with the ultimate intention of bridging the Mississippi in the neighborhood of Ste. Genevieve, crossing into Illinois and getting into St. Louis through the American Bottom. Mr. Houck signed his letters as an individual. He used the pronouns "I" and "me" copiously. He spoke of the roads built or building as "my" roads—of the contemplated line from Cape Girardeau to Perryville as "his," and plaintiff relies strongly on such twist of phrase as tending to show a contract between plaintiff corporation and defendant as an individual.

But we cannot allow this view controlling force for several reasons. One reason is that a little subconscious egotism is allowable as a trick of speech to a man who has achieved some greatness (not from things merely said, but) on the arduous plane of things actually done. It must be remembered that Mr. Houck was speaking of things not inaptly described by the phrase of the old worthy (Cæsar, maybe): "All of which I saw and much of which I was." There is no pretense that Donaldson was misled by the *ego*.

Another reason is that while Mr. Houck signed his letters as an individual and freely used pronouns in the first person singular, yet he also addressed his letters to "J. W. Donaldson" individually. He used the address, "My dear Mr. Donaldson," "Dear Sir," etc. Mr. Donaldson was an old business friend of his. In turn the letters written to Mr. Houck are signed in one or more instances by Mr. Donaldson individually,

but mostly by "J. W. Donaldson" with such several *addenda* as "Ps't," "Pres.," "Pt.," "Prest."

Now, if we are to narrowly interpret the letters from an individual standpoint, they would, if held contractual, bind Donaldson individually as well as Houck and the suit would be between the man Donaldson and the man Houck, but the truth is that while Houck wrote to Donaldson as an individual he knew that Donaldson was the titular and actual head of plaintiff corporation and did business through that corporation. So, too, Donaldson knew that plaintiff's plan was to do this business through the medium of a railroad corporation. Neither party had the advantage of the other in that respect. The eyes of both were wide open, and their minds met on that proposition. But as the letters show Houck to be in financial straits, so they also show that the contemplated scheme (one of several described in the letters) for a railroad from Cape Girardeau to Perryville could not be carried out except the contemplated corporation was put on its feet by the sale of its bonds. Everything hinged on that fact. Houck told Donaldson that the road was to be built by a corporation not in existence and it will not do to say that Donaldson, an experienced broker, did not know that before the end was consummated his company would have to contract and deal with a corporation in this "hazzard of new fortune." He is presumed to know that under our statutes an individual did not possess the right of eminent domain for railroad building in Missouri. He knew that a corporation would have to spring into existence to build that road, issue the stock and bonds and secure the latter by a mortgage.

Accordingly, we are of the opinion that the circumstances surrounding all the parties and throwing light on the verbiage of the letters were of such sort that the court could well find that Houck never intended

to be bound personally and that Donaldson had notice of that fact—that their minds never met on any such proposition, as will further appear later when the written contracts are considered.

The very letter on which plaintiff chiefly relies to establish the contract sued on shows it was not intended as a contract. It was in the nature of a preparatory negotiation, a tentative suggestion—"a feeler"—to see what Donaldson could do to better the whole Houck system, the success of which, as shown *aliunde,* Donaldson's company was already interested in. That letter is as follows:

"Cape Girardeau, Mo., Aug. 27, 1900.
"J. W. Donaldson, Esq.,
        Third and Olive streets,
            St. Louis, Mo.
"My Dear Mr. Donaldson:

"Enclosed I send you a statement of the indebtedness of my several roads and earnings of the same from July, 1899, to the end of June, 1900. Also in brief words an outline of my scheme to connect roads, which I explained to you verbally. The map I will try and send up some time during the week, as quick as Major Brooks can finish it. Other information that you may want please write me and I will furnish it.

"In regard to the extension north will say that I expect to sell to the people along the line bonds at par to the amount of forty or fifty thousand dollars, so that if you can make a sale of $175,000 of the bonds at 80 cents on the dollar I could put that road through. This would leave $25,000 of bonds as a bonus for you, and to that I would also add a bonus of $50,000 of the stock of the line between Cape Girardeau and Perryville.

"In order to connect the Bloomfield road with my roads from Cape Girardeau south I would have to build from Zeta to Vanduser. (Vanduser is a station about

6 miles southwest of Morley.)    That distance is about
11 miles.    And I also want to put in the extension
between Bloomfield and Dexter, about 8 miles.    Total
distance 19 miles.    This additional road I will want to
bond for $100,000; and if you can place the bonds, sell-
ing $90,000 at 80 cents on the dollar, it will give you
a bonus of $10,000 in bonds and $25,000 in stock.

"As soon as these several links are built we will
have over 300 miles of road, and a total indebtedness
on all this line of but little over $1,400,000.    The earn-
ing capacity of the property will be unequaled, and
I am sure that we will make the stock earn dividends
shortly after we have got the lines combined.    Of
course, after these connections are built the next thing
will be to construct 35 miles into St. Louis, and get
a bridge across the Mississipi somewhere above Ste.
Genevieve.    I believe that would be a comparatively
easy proposition for us to carry through.    In three or
four years, if we all live, we ought to be able to see
daylight, and in some way or other I ought to be, as
you put it, 'easy with regard to construction of road
and not always in hot water.'

"Wish you would see what you can do now first
with reference to securing me the money on $175,000
of bonds at 80 cents on line between Cape Girardeau
and Perryville.    I want to get that line under construc-
tion quick if possible.    After we have got that fairly
under way I think you can easily, perhaps, arrange
to get what small amount I want to construct a con-
nection to Bloomfield and Dexter.

"In the meantime do not neglect to try and sell
four or five thousand dollars of bonds for me of the
Perryville Road.    I want, of course, one-half to be
applied to pay note, and the other half, I need not
say, I need just now.    I am out of pocket money and
everything else.                Very truly yours,

                            "Louis Houck."

Presently, a railroad corporation was organized styled the St. Louis, Cape Girardeau and Southern Railroad Company to build a line from Cape Girardeau to Perryville and plaintiff was instrumental in procuring a contract between that corporation and the Missouri Trust Company to float the bonds.

Plaintiff's written proposition to the trust company (accepted by it) contained the following:

"We will join you in the subscription to the issue taking the $225,000, a. 80=$180,000—and getting as a bonus a portion of the capital stock amounting to $112,500, or 1125 shares."

Subsequently, it was agreed that the bond issue should be increased from $225,000 to $250,000, and the final contract includes that sum. Though plaintiff did not sign the contract between the trust company and the railroad company, yet the record shows that, as a sort of underwriting side-partner, it was jointly interested with the trust company in the scheme to float the bonds, and was to share in its aforesaid stock bonus. We may say in passing that the scheme had developed and changed from time to time; and, after the letter of August 27, 1900, *supra,* we find nothing more in the correspondence relating to the $50,000 stock bonus suggested in that letter. It is a fair inference, therefore, that the new scheme whereby plaintiff was to share in the trust company's stock bonus and profits took the place of the original tentative suggestion relating to stock and is the only stock bonus finally provided for.

The aforesaid contract between the trust company and the railroad company is long and need not be reproduced. Shortly, it narrates that the railroad company contemplates constructing a line of railroad from Perryville to Cape Girardeau, about forty-five miles, and to obtain part of the money required proposes to sell its stock and bonds. That the bonds are to an

213 Sup—28

amount of $250,000. That the stock consists of 4500 shares full paid up common of the par value of $100 each and no more. That the trust company is to be trustee in the mortgage and the bonds are to be secured by the guaranty of another little railroad (naming it) then subject to a prior mortgage securing $140,000. The railroad company sells and the trust company buys $225,000 in bonds and $112,500 in stock for $180,000 in installments as certain sections of the road are built —the road to be completed by the 1st of July, 1902.

On a record thus outlined, the trial court could well find that Louis Houck never contracted and never intended to contract with plaintiff brokerage company in his individual capacity as alleged in the first count of the petition. The court could well find and presumably did find that there was an implied term in all the antecedent preparatory negotiations between Houck and Donaldson to the effect that when the plan developed sufficiently to take form and substance, the promoting brokers would deal directly with a railroad corporation.

(b) The conclusion reached in paragraph *a* is much strengthened by after events. At a certain time plaintiff caused to be sent to defendant an agreement in writing for execution by him and the railroad company. Its draft follows:

"St. Louis, Mo., July 31, 1901.

"This agreement entered into this day by and between Louis Houck for himself and also the St. Louis, Cape Girardeau & Southern R. R. Co., a corporation duly organized under the laws of the State of Missouri, and the Donaldson Bond & Stock Co. of St. Louis, Witnesseth: That said L. Houck and the St. Louis, Cape Girardeau & Southern R. R. Co. are constructing a railroad from Perryville in Perry Co., Mo., to Cape Girardeau City, Mo., and for means to enable them to carry out the project and construct the road, author-

ized the Donaldson Bond & Stock Co. to sell for them $225,000 of 1st. Mort. 5% bonds secured by first mortgage on said road which the said Donaldson Bond & Stock Co. did, and sold to the Missouri Trust Co. said bonds, and contracts signed in duplicate as to the delivery of bonds and payment of moneys therefor have been delivered and accepted under seal by said St. Louis Trust Co. And the said Donaldson Bond & Stock Co. having carried out their contract of sale and fulfilled their obligations are entitled to their compensation for services rendered. Namely upon the execution of the bonds by the R. R. Co. and viseing of the same by the Trust Co. said Donaldson Bond & Stock Co. are to receive $10,000 in bonds and upon completion of the first ten miles of said roads they are to receive $5,000 in bonds more of said 1st mortgage bonds, for the next ten miles $5,000 and when the line is completed from Perryville to Cape Girardeau the balance $5,000 in full, making a total of $25,000 in bonds out of a total of $250,000 in bonds issued by the railroad company and of which issue the Missouri Trust Co. bought $225,000 in bonds.''

The scheme had been brewing in sundry phases of development for nearly a year, when the foregoing proposed agreement was forwarded to defendant. When he received it he changed its terms so as to strike out all provisions and narrations binding himself. He drafted a new contract and forwarded it to Mr. Donaldson. The record shows that Mr. Donaldson was advised fully in the premises. He well knew the significance of the alterations made. Neither of these men were novices. To the contrary, they were alert and seasoned veterans in business. Referring to the proposed agreement forwarded by him to defendant, Mr. Donaldson testified in part as follows:

"Q. You say in there you tried to put the name

of Louis Houck as a party to the contract? A. Yes, sir.

"Q. And you notice we struck it out? A. Yes, sir.

"Q. And we sent you that contract? A. Yes, sir.

"Q. And you got it? A. Yes, sir.

"Q. And what did you object to in it—simply the two clauses and not that the defendant had not signed it? A. I did."

Evidently the time to speak was ripe. Instead of speaking, plaintiff company through Donaldson raised *other* objections to the submitted draft but entirely acquiesced (by silence) in the elimination of defendant as a contracting party and actually signed a contract with the railroad company, which Donaldson on the stand interprets as a mere order for bonds, but which we do not think can be justly reduced to any such narrow limits. To our minds it is the very contract contemplated from the start and which gives plaintiff his right of action, if any, on the facts of this record. That contract as licked into shape by negotiation (omitting signatures) follows:

"AGREEMENT.

"This agreement entered into this day by and between the St. Louis, Cape Girardeau & Southern Railroad Company, a corporation duly incorporated and organized under the laws of the State of Missouri, and the Donaldson Bond & Stock Company, of St. Louis, Witnesseth:

"Sec. 1. That the said St. Louis, Cape Girardeau & Southern Railroad Company are constructing a railroad from Perryville, in Perry county, Missouri, to Cape Girardeau, in Cape Girardeau county, Missouri, and for means to enable them to carry out the project and construct the road authorized the Donaldson Bond & Stock Company to sell for them two hundred and,

twenty-five thousand ($225,000) dollars of the first mortgage five (5%) per cent bonds secured by a first mortgage on said road, which the said Donaldson Bond & Stock Company did, and sold to the Missouri Trust Company said bonds, and contract signed in duplicate as to the delivery of bonds and payment of moneys therefor having been delivered and accepted under seal by said St. Louis, Cape Girardeau & Southern Railroad Company and Missouri Trust Company, and the said Donaldson Bond & Stock Company having carried out their contract of sale and fulfilled their obligations are entitled to their compensation for services rendered, namely: Upon the execution of the bonds by the railroad and viseing of same by the Trust Company, said Donaldson Bond & Stock Company are to receive an order on said Trust Company for delivery of ten thousand dollars in bonds, and upon completion of ten miles of said road they are to receive a further order of five thousand dollars in bonds more of said first mortgage bonds; for the next ten miles an order of five thousand; and when line is completed from Perryville to Cape Girardeau an order for the balance on said Trust Company for five thousand dollars in full, making a total of twenty-five thousand dollars in bonds out of a total of two hundred and fifty thousand dollars in bonds issued by the railroad company, of which issue the Missouri Trust Company bought two hundred and twenty-five thousand dollars in bonds.

"Sec. 2. It is agreed by the Donaldson Bond & Stock Company that they will not sell any of these bonds until at least twenty miles of the road is completed.

"Sec. 3. And further it is agreed that in case the said Missouri Trust Company should in anywise fail or refuse to carry out the contract for the purchase of said two hundred and twenty-five thousand dollars of bonds that the bonds to be delivered hereunder are

to be returned to said St. Louis, Cape Girardeau & Southern Railroad.

"Sec. 4. And it is further agreed that the interest coupons of the said ten thousand dollars of bonds delivered and of the several installments of bonds of five thousand dollars shall not be paid by the said company until one year after the completion of the said road between Cape Girardeau and Perryville.

"In witness whereof, this contract has been signed and attested by the seal of said St. Louis, Cape Girardeau & Southern Railroad Company by its president and attested by the seal of the company, this 2d day of August, 1901. . . .

"It is mutually agreed that sections marked 3 and 4 of above contract shall be and are hereby revoked and this following section marked 5 be substituted in lieu thereof namely, section 5. It is further agreed that for coupons on $25,000 bonds due respectively, 1st Jany. 1902, and 1st July, 1902, the following agreement shall obtain, viz.:

"The St. Louis, Cape Girardeau & Southern R. R. Co. will give the Donaldson Bond & Stock Co. the notes of the company for all coupons maturing on bonds delivered them as above, as follows: For coupons due Jany. 1, 1902, amounting to $625 the note of the company payable one year after date with 5% interest, and for coupons due July 1, 1902, amounting to $625— note of the company for same amount due Jany. 1, 1903, with interest at 5% per annum. The Donaldson Bond & Stock Co. to take up the coupons for those two terms on bonds delivered them as said coupons mature by depositing the money to pay the same with the Missouri Trust Co. as a special fund for the coupons on the $25,000 in bonds or any part of the said $25,000 in bonds delivered to them."

Defendant relies on that contract as covering the subject-matter of the suit as to the bonds to be given

in compensation for services. As said heretofore, plaintiff's learned counsel argue that such contention is but an effort to apply the doctrine of novation to the case. They argue that defendant, being individually bound originally, now seeks by way of a shield against liability to introduce a new party by novation to which plaintiff must look for its pay. They have industriously collected a line of cases holding, in effect, that, where there is an original binding contract, a contracting party cannot escape liability by novation or substitution where there is no consideration for the new agreement, where the old contract was not rescinded or abandoned, or where the new agreement did not cover the whole subject. We shall not enter into a discussion of those contentions for the reason that we have reached the conclusion that the doctrine of novation . is not in the case. What was done here was not to *substitute—it was the very thing itself*. When plaintiff corporation, looking forward to a contract as we have held it did, accepted one, as it did, which narrated (not that Houck, but) that the railroad company was constructing a railroad from Perryville to Cape Girardeau, that (not Houck, but) the company needed means to enable it to carry out the project, that (not Houck, but) the company had authorized plaintiff to sell its bonds which plaintiff had done, and which narrated that plaintiff had carried out that very contract of sale and had fulfilled its obligations thereunder and was entitled to its compensation for services rendered as set forth—we say all these things appearing in set phases, it cannot be fairly held that it was a mere order for bonds. It must be held that it was contractual in its nature, that it evidenced those features finally deemed vital by the contracting parties, and merged into itself all prior negotiations. The legal principles involved are so primary that they need no re-enforcement by citation of authority.

In view of the premises we are unwilling to hold that the court erred in giving the instruction on the first count and then finding the facts against plaintiff.

II.  The evidence shows that the bonds were never delivered to plaintiff, that no bonds were ever sold, and that the road was abandoned.  It seems the president of the Missouri Trust Company, Mr. Crandall, dying, new officers took charge of its affairs who raised the point that the railroad company had violated the contract.  They criticised the scheme as it then stood and suggested a new one.  No new contract was consummated and the whole thing fell through.  There is some evidence squinting towards the fact that the railroad company or Mr. Houck, or both, became lukewarm and indifferent and failed to go on. . In this condition of things, we are asked to measure out praise and blame, to hold that plaintiff fully performed its contract to find a purchaser for the bonds who was solvent and obligated to take them and that the failure of the scheme is due to the conduct of defendant.  But it must be self-evident that having held that defendant did not contract with plaintiff *individually,* there is no need to determine questions so raised, hence, the cause of action alleged in the first count of the petition being determined before those questions are reached, they become by-matter.

We should not determine a point not necessary to a decision and thereby in anywise prejudge a cause of action which plaintiff may or may not have on that very issue of fact against the St. Louis, Cape Girardeau & Southern Railroad Company.

III.  Did the court err in refusing the instruction covering the second count?  We think not.  However correct as an abstract proposition of law, it was properly refused because there is not evidence of any probative force that plaintiff was the procuring cause of

the sale mentioned in that count. The documentary evidence introduced on that count, including letters and option agreements, and the oral testimony, of which there was much, clearly show that plaintiff was not the procuring cause. True, plaintiff at one time was negotiating with Mr. Fordyce. True, Mr. Fordyce was a member of the last syndicate formed to buy and which did buy the Houck roads. But there is no testimony that Mr. Fordyce became a member of the final syndicate through the effort of plaintiff. It is the other way. Mr. Houck was engaged on independent lines in the sale of his stock in the Houck system. The early negotiations in which plaintiff took part came to nothing and were abandoned to all intents and purposes. The testimony shows that plaintiff knew nothing of the formation of the last purchasing syndicate. These facts present an impassable obstacle in the way of recovery.

We conclude the finding, *nisi,* was right on the second count.

IV. In its motion for a new trial the plaintiff alleges error in excluding evidence offered on the second count. This evidence went to the measure of the damages, but as we have held that under the facts and the law there was no liability, it follows that an exception saved on the exclusion of evidence of that character could not constitute reversible error. But on any view, the testimony excluded was too remote. It related to the value of bonds issued after the system was sold.

The cause appears to have been well tried and well decided.

Accordingly, the judgment is affirmed.

All concur except *Valliant, P. J.,* who is absent.