Leo F. MIX and Harold L. Miller, Plaintiffs,

v.

Bob BROYLES and Bob Broyles and Associates, Inc., Respondents,

and

E. K. Vaughn, Appellant.

No. KCD 28271.

Missouri Court of Appeals, Kansas City District.

June 12, 1978.

Bob F. Griffin, Cameron, for plaintiffs; Griffin & Luckenbill, Cameron, of counsel.

R. Leroy Miller, R. Max Humphreys and Allan D. Seidel, Trenton, for respondents; Miller, Humphreys & Seidel, Trenton, of counsel.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

This case, being a dispute between two realtors for the commission, $15,000.00, resulting from the sale of plaintiff Mix's 1,000 acre farm, began by an interpleader action filed by Mix and the escrow agent, Harold L. Miller, wherein they deposited the $15,000.00 into court. Miller was allowed $717.70 as an attorney fee which was deducted from the allowance of the commission to respondents [Broyles], who received a net judgment for $14,282.30. The trial court, however, gave judgment in favor of Broyles for the attorney's fees against Vaughn on Broyles cross-claim, and this becomes an issue on appeal along with that of which realtor is entitled to the commission.

Mix orally listed his farm with Vaughn on July 30, 1974. Spader, of the Vaughn firm, brought the subsequent purchaser, Overmyer, to see the farm. Mix testified that he did not recall that Vaughn told him that Overmyer would pay $300 per acre if the hay was included. Mix testified further that Vaughn never presented him with any money offers, or a written offer from Overmyer. He withdrew his listing with Vaughn about November 25, 1974, because he had decided to buy some cattle and run the farm himself.

Mix testified that he orally listed the farm around December 1, 1974, with Broyles, and the price agreed to be asked was $350.00 per acre, including hay, grazing and possession rights which were not in Vaughn's listing, but there were different negotiations at other times. Mix finally sold the farm to Overmyer for $302.50 per acre, plus $16,000.00 for the hay, and the contract of sale was signed on December 13, 1974.

Overmyer's version of his dealings with the two realtors was this: He had seen advertisements by Broyles as to northern Missouri land in the "Drover's Journal", and came there because of the advertisements. He first contacted Vaughn about the Mix farm and Spader showed it to him. After he looked at the farm, Overmyer never contacted Vaughn, but Vaughn contacted him in November. He never entered into negotiations with Vaughn as to price, except that he may have offered $200.00 per acre, or $300.00 per acre if he could get the hay and the down payment treated as rental, but he never received any response. At the time he became acquainted with Broyles, he was not dealing with any other realtors in Missouri. After having purchased a Mercer County farm through Broyles, he came back to look at the Mix farm with Broyles. He did not go back to Vaughn because Vaughn had other people interested in the farm, and was high-pressuring him. The deal for the Mix farm was different than what had been presented to him before in that it was less in price and he was able to get all of the hay.

Broyles confirmed Overmyer's testimony about the first contact between them which resulted in the purchase of the Mercer County farm. In late November, 1971, Overmyer contacted him about acquiring more land, and Broyles asked Mix if he wanted to sell his farm and Mix answered affirmatively. Broyles showed Overmyer the farm and conveyed his first offer of $300.00 per acre, plus all the machinery, hay and feed and immediate possession, which offer Mix refused. There were further negotiations, and eventually the parties agreed on the contract price of $318,000.00, including the hay and immediate possession. Broyles charged a commission on the sale of the realty alone. He first became aware of another realty company being involved in the sale of the farm shortly before the contract was signed. He never had a discussion with Vaughn about the Mix farm, and denied, contrarily to Vaughn's testimony, that he wrote Vaughn requesting to co-broker the Mix farm.

Vaughn testified that he asked Mix about July 30, 1974, if he could list the farm at $325.00 per acre, and Mix agreed. Vaughn advertised the farm in the "Drover's Journal", and on October 31, 1974, Overmyer called him about the advertisements. Spader showed Overmyer the farm on November 1, and again talked to him the next day while showing the farm to someone else. On November 11, Overmyer indicated he was interested in giving $300.00 per acre, including soybeans and hay, and let him make the down payment as a tax break. Mix told Vaughn to go ahead and make the deal, whatever deal he could come up with, but Vaughn acknowledged that he did not contact Overmyer until after he received Mix's letter revoking the listing contract. Vaughn called Overmyer after the first of December and was told by him that he was still interested in the farm. Vaughn never heard from him after that.

Broyles' interrogatory No. 5 was addressed to Vaughn asking if Overmyer had ever made an offer to purchase the Mix farm, and if so, what was it. To this Vaughn answered, "On December 3, 1974, we called Mr. Overmyer and he said he was very interested in the farm and he said that we should be hearing from him soon."

■ There is certainly abundant evidence, above outlined, that the trial court, considering also its function of judging the credibility of the witnesses, *Stenzel v. State Dept. of Revenue,* 536 S.W.2d 163 (Mo.App. 1976) and deferring to it on that basis, *Long v. Lincoln,* 528 S.W.2d 512 (Mo.App.1975), could as it did find that Broyles and not Vaughn was the procuring cause of the farm sale. It is significant to note that Vaughn's testimony that Mix told him to go ahead with whatever deal he could make after communicating Overmyer's offer of $300 per acre, plus soybeans and hay, etc., stands alone. No answer to the interrogatory above set forth any offer. Of further significance is the fact that the testimony of Broyles, Mix and Overmyer is in agreement as to offer and acceptance of the terms of the sale as consummated in the executed contract. It is not sufficient that the broker is the first to bring the parties together. If the negotiations are nonproductive, as the trial court here could have found, and the parties withdraw from negotiations, or abandon the sale, as also the trial court could have found, a subsequent sale by another does not entitle the first to a commission. *E. A. Strout Realty Agency, Inc. v. McKelvy,* 424 S.W.2d 98, 103 (Mo. App.1968). See also *Holman v. Fincher,* 403 S.W.2d 245, 250 (Mo.App.1966). Under the standard of review in this court-tried case in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976), there is no firm belief that the judgment as to which realtor was entitled to the commission is wrong. This disposes of Vaughn's first eight points variously addressed as to which realtor was the procuring cause of the sale.

■ As noted, the trial court allowed to plaintiffs, who brought the interpleader suit, $717.70 as attorney fees. The propriety of that allowance [see *John A. Moore & Co. v. McConkey,* 240 Mo.App. 198, 203 S.W.2d 512, 516 (1947), and cases cited] and its amount is not here contested by any party. Vaughn, however, is here contend-

ing that the trial court erred in adjudging the $717.70 attorney fees against him and in favor of Broyles because the latter did not specifically plead them as damages in his cross-claim against Vaughn. It is true that there was no specific claim of damages for any attorney fees which might have been awarded plaintiffs in the initial interpleader suit. The cross-claim was bottomed upon an allegation of tortious interference with contract, thereby causing its breach by plaintiffs, and asked $2,500.00 damages for attorney's fees and other expenses incurred by reason of being required to engage in litigation. The cross-claim was ruled in favor of Vaughn and against Broyles, and Vaughn further contends that the $717.70 award was in conflict with that cross-claim judgment. Vaughn does not contest the award of other costs, i. e., the fee-bill type, against him. What rules this point is that an interpleader suit is a matter of equitable cognizance independent of § 507.060, RSMo 1969. *Kearney Commercial Bank v. Deiter,* 407 S.W.2d 575, 579[2] (Mo.App.1966), and cases cited; *Badeau v. National Life & Accident Insurance Co.,* 305 S.W.2d 876, 878[2–4] (Mo.App.1957). Broyles, in his counterclaim against the interpleading plaintiffs, Mix and Miller, asked that the entire $15,000.00 paid by them into court be awarded him as commission for the sale of the real estate. In effect, that is exactly what the trial court awarded him as being the prevailing party on the issue as to which realtor was entitled to the commission. This necessarily included a judgment for attorney's fees, which had been allowed plaintiffs-interpleaders, over against Vaughn. This judgment for attorney's fees in the interpleader suit is perfectly proper. In *Clay County Court v. Baker,* 241 S.W. 447, 450[12] (Mo.App.1922), the court said, "The allowance of $150 as attorney's fees to the plaintiff *and the judgment therefor,* with costs against Baker, the *unsuccessful* interpleader, whose *unjustifiable claim* caused the litigation, was within the discretion of the chancellor, and cannot be disturbed. (Citing cases.)" [Emphasis supplied.] See also *Spicer v. New York Life Ins. Co.,* 237 Mo.App. 725, 167 S.W.2d 457, 468[5] (1942);

48 C.J.S. Interpleader, § 50, p. 110. In this case, Vaughn's demand that he was entitled to the commission caused the litigation, for which Broyles was not responsible. In this circumstance, Broyles is entitled to his *full* remuneration for being the procuring cause of the sale of the land, as held. Vaughn was not, as held, the procuring cause of the sale. To require Broyles to accept anything less than his full remuneration as his earned commission would be inequitable, and therefore the court did not err in giving judgment for the attorney's fees allowed plaintiffs over against Vaughn, who unjustifiably caused the interpleader suit, and who did not create the fund paid into court.

Vaughn lastly complains that the trial court erred in excluding his evidence and the offer of proof as to his damages based upon his claim against Broyles for alleged tortious interference with his contract of sale with Mix. The matter need not be considered because the court found against Vaughn upon his alleged contractual claim for commission and thus must be deemed not to have reached any issue of damages. The excluded evidence could not have affected the result. *Forrister v. Sullivan,* 231 Mo. 345, 132 S.W. 722, 732 (1910); *Magee v. Pope,* 234 Mo.App. 191, 112 S.W.2d 891, 900[9] (1938), "However, this being an equity case, the reviewing court has the right and power to disregard improper admission or exclusion of testimony, if it finds that such testimony would not affect the conclusion arrived at by the court on the evidence properly adduced, * * *." See also *Donaldson Bond & Stock Co. v. Houck,* 213 Mo. 416, 112 S.W. 242, 249 (1908), a jury waived broker's commission case, the court saying, "In its motion for a new trial the plaintiff alleges error in excluding evidence offered on the second count. This evidence went to the measure of the damages; but as we have held that under the facts and the law there was no liability, it follows that an exception, saved on the exclusion of evidence of that character, could not constitute reversible error."

The judgment is affirmed.

All concur.