**M. B. RAYFIELD, Plaintiff-Appellant,**

v.

**Allen RADFORD, Defendant-Respondent.**

No. 32254.

St. Louis Court of Appeals.

Missouri.

June 14, 1966.

E. L. McClintock, Jr., Flat River, for plaintiff-appellant.

Smith & Colson, Farmington, for defendant-respondent.

DOERNER, Commissioner.

This is an action by a real estate broker for a commission of $500 alleged to be due from defendant. Trial to a jury resulted in a verdict and judgment for defendant, and after his post-trial motions were overruled, plaintiff brought this appeal.

The only points preserved by plaintiff for review relate to the giving of Instructions numbered 4 and 5, offered by defendant. On his part, in addition to denying that error was committed in the giving of those instructions, defendant urges that the plaintiff's petition failed to state a claim upon which relief could be granted; and that the court erred in overruling his motion for a directed verdict at the close of all of the evidence because plaintiff failed to make a submissible case. Since the latter contention, if valid, will dispose of the appeal we consider it first.

Adopting the view of the evidence most favorable to plaintiff, it shows that on May 27, 1961 defendant executed a written listing contract which gave plaintiff the exclusive right to sell defendant's property, numbered 303 Jackson Street in Bonne Terre, Missouri, for a period of 6 months. After about 30 or 60 days, at defendant's request, the written contract was terminat-

ed by mutual consent. Approximately a year and a half later, in January, 1963, defendant encountered plaintiff near an overpass in Bonne Terre and asked plaintiff if he would help him sell defendant's real estate. Plaintiff readily agreed to do so. Plaintiff testified that the only similarity between the oral agreement and the written contract was that it was agreed that he would receive the same commission, $500, if he sold the property, and that defendant agreed to keep him informed of any change in the price of $13,000 which defendant stated he wanted for the real estate. On cross-examination plaintiff was asked:

"Q. Now, then, were there any other terms or provisions to that oral agreement?

"A. Not to my knowledge.

"Q. Suppose he (defendant) sold the property?

"A. If he sold the property, he didn't owe me a dime."

Following the making of the oral agreement plaintiff renewed his efforts to find a purchaser. He obtained a prospective buyer named Wilson, who executed an earnest money contract for the purchase of the property for $12,500 on June 3, 1963, which defendant accepted, but the contract was conditioned on Wilson's procurement of a loan from the Veteran's Administration, and when his application was refused the deal fell through. Plaintiff had obtained a key to the house from defendant and also showed the property to Mr. and Mrs. Delmar Weber on August 3, 1963, to a Mrs. Davis on August 8, and to a Mrs. Seiberling on August 9, his efforts being known to defendant. On Sunday, August 11, 1963, the Webers conferred with plaintiff at his office, discussed alternative methods of financing, and agreed to buy at a price of $12,500, the figure to which defendant had in the meantime reduced the price. However, on cross-examination Mr. Weber, who appeared as a witness for plaintiff, testified that their purchase of the property depended upon their ability to get financing. There was evidence on plaintiff's behalf that had the Webers applied to the Bonne Terre Federal Savings and Loan Association for the loan necessary to finance their purchase it would have been granted. The Webers did not deposit any earnest money with plaintiff or execute any written contract to buy, and left with the understanding that plaintiff would call upon them the next day for a deposit of $200.

Upon the departure of the Webers from his office plaintiff was at first unable to contact defendant by telephone, but finally did so and called upon defendant at the latter's home about 6:00 P.M. of the same day. From plaintiff's somewhat disjointed statement as to the conversation which ensued it is difficult to reconstruct what each party said, or the order in which he said it. The gist of the matter, however, is that plaintiff informed defendant that he had his house sold, told defendant of the method of financing through an FHA loan which he had discussed with the Webers, and stated that he had advised the Webers that he was sure defendant would not consent to that method because it would cost defendant an additional five per cent which he was sure the defendant would not pay. He intended, he testified, to tell defendant that a conventional-type loan would be made, but that defendant interrupted him to say, "* * * 'I've got another deal going,' * * *" and "* * * 'We will just have to wait until I see what develops on this other deal.' * * *" According to plaintiff, that ended the conversation and he left immediately, apparently in a huff. So far as the evidence shows, plaintiff never did anything further regarding the sale to the Webers. He did, however, ascertain that Frank Edgar, the ultimate purchaser of defendant's property, had applied to the Bonne Terre Federal Savings and Loan Association for a loan on the real estate on July 30, 1963.

As part of his case plaintiff introduced in evidence a part of defendant's deposition,

taken prior to the trial. Regarding the oral agreement concerning plaintiff's compensation defendant testified therein, "I told him (plaintiff) that if he sold the place I would still give him the same agreed figure that was in the (written) contract, but if I sold it, he would not receive anything." Plaintiff agreed to that. No time limit was specified within which plaintiff had to effect a sale. Defendant also related in his deposition that at some unspecified time, but obviously before August 11, 1963, he had had a conversation with Edgar about the sale of his place, and that he told Edgar he would sell him the property for $12,000 "if he could get a loan." Defendant also testified in his deposition that he did sell the property to Edgar on October 3, 1963, for $12,000.

Both in another part of his deposition, read by his counsel, and in his testimony at the trial, defendant stated that no written contract was ever entered into by him with Edgar; and that in his conversation with Edgar he had told Edgar that if the latter would come up with some money and if the place wasn't sold at the time he did so the place was his. Likewise, on both occasions defendant testified that when plaintiff called at his home on August 11, 1963, he told plaintiff, "* * * that the first man that came with money to put down on the place I would consider it sold. * * *" He also testified at the trial that he had never told plaintiff he would not sell to the Webers.

■ The question of when a real estate broker becomes entitled to a commission depends, in the final analysis, upon the terms of his contract with the owner of the property involved; Wolcott v. Moser, 364 Mo. 443, 262 S.W.2d 620; Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453; and the parties may, of course, condition the owner's liability for the payment of a commission upon prescribed terms and conditions. Tant v. Gee, 348 Mo. 633, 154 S.W. 2d 745; Staples v. O'Reilly, Mo.App., 288 S.W.2d 670. In the absence of a contractual provision to the contrary, the general rule is that when an owner of real estate merely places it in the hands of a broker for sale he does not thereby relinquish his right to sell the property himself or through a second broker, without the first broker's aid; and that if the property is so sold, the owner is not liable to the first broker for any commission; George B. Loving Co. v. Hesperian Cattle Co., 176 Mo. 330, 75 S.W. 1095; Byers Bros. Real Estate & Ins. Agency, Inc. v. Campbell, Mo. App., 329 S.W.2d 393; Weisels-Gerhart Real Estate Co. v. Wainwright, 127 Mo.App. 514, 105 S.W. 1096; Cook v. Salisbury, Mo.App., 225 S.W. 112.

■ We are not here concerned with a contract by which the owner granted the broker the exclusive right to sell the property within a specified time, nor one which provided that the broker would be entitled to a commission if a sale of the real estate was effected by anyone during the contractual term, as in Chamberlain v. Grisham, 360 Mo. 655, 230 S.W.2d 721, and Schulte v. Crites, Mo.App., 300 S.W.2d 819. Both parties here agree that the written contract giving plaintiff the exclusive right to sell defendant's property was terminated by mutual consent. What is more important, both parties agree that by the terms of their oral agreement, which followed the termination of the written contract, they understood and agreed that defendant retained the right to sell his property himself, and that if defendant sold it before plaintiff did, defendant would not be liable to plaintiff for any commission. Under such an agreement it is necessary for the broker, in order to become entitled to a commission, to either obtain a binding written contract from the prospective buyer obligating the buyer to purchase the land upon the terms specified by the seller, and present the contract to the seller; or to bring to the seller a buyer ready, willing and able to buy on the seller's terms or terms which he accepts; Cook v. Salisbury, Mo.App., 225 S.W. 112; Lombard v. Sills, 170 Mo.App. 555, 157 S.W. 93. Disregard-

ing defendant's evidence, except such as might be favorable to plaintiff, it is apparent from plaintiff's own testimony that he never satisfied either of the foregoing prerequisites with which he was required to comply in order to become entitled to a commission. Neither before, during or after his conversation of August 11th with defendant did plaintiff obtain and present to plaintiff a binding written contract executed by the Webers; nor did he bring the Webers, ready, willing and able to buy, to the defendant.

The reason is readily apparent. It is obvious that plaintiff chose to regard defendant's statement that he had another deal going, and that they would have to wait to see what developed on it, as a declaration by defendant that prior to their conversation he had entered into a binding agreement to sell his property to Edgar. That, in fact, was the theory pleaded in plaintiff's petition, for he alleged that, "* * * defendant entered into an agreement to sell the property on or before the 30th day of July 1963 * * *;" and further alleged that when he notified defendant on August 11 that he had found a buyer, "* * * defendant stated he had already sold the property * * *." The fatal weakness in that theory, of course, is that by the admitted terms of their oral agreement defendant had retained the right to sell his property himself; and that having done so before plaintiff notified him of plaintiff's supposed sale to the Webers, then, in plaintiff's own words, "* * * he didn't owe me a dime." Cook v. Salisbury, supra; Weisels-Gerhart Real Estate Co. v. Wain-Wright, 127 Mo.App. 514, 105 S.W. 1096.

Thus plaintiff's own evidence not only showed that he had failed to fulfill those conditions which were prerequisites to his right to a commission; but it also showed, under his theory of the case, that plaintiff was not entitled to a commission because as permitted by their oral agreement defendant had sold his property himself before plaintiff notified him of his

supposed sale to the Webers. Defendant's motion for a directed verdict at the close of all the evidence should, therefore, have been sustained. Having reached that conclusion it is not necessary to consider the other points raised by the parties.

The judgment below, which was in favor of defendant, is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.