E. A. STROUT REALTY AGENCY, INC.,
Plaintiff-Respondent,

v.

Virginia R. McKELVY, Defendant-
Appellant.

No. 8712.

Springfield Court of Appeals.

Missouri.

Jan. 12, 1968.

Ted M. Henson, Jr., Poplar Bluff, for defendant-appellant.

Hyde, Purcell & Wilhoit, Poplar Bluff, for plaintiff-respondent.

TITUS, Judge.

Without jury assistance, the Circuit Court of Butler County adjudged the defendant, Virginia R. McKelvy, indebted to plaintiff for a real estate commission in the sum of $2,800. Plaintiff, a corporate real estate broker, was represented in all concerned transactions by its salesman, Carter Fogle. In this appeal defendant

contends the judgment of the trial court was erroneous because "(a) there is no evidence that plaintiff's salesman was the inducing or procuring cause of the real estate sale in question and (b) there is evidence that the negotiations between plaintiff's salesman and the purchaser of the real estate in question had broken off before the sale was made between defendant and the said purchaser."

Defendant had executed and plaintiff accepted a written "Open Non-Exclusive Listing Agreement with E. A. Strout Realty Agency, Inc.," which, in part, provided: "I * * * employ you to procure a purchaser, ready, willing and able to buy [my 88 acre farm in Butler County, Missouri] at the listed price and terms [Price—$29,-500; Down Payment—$5,000; Terms of Balance—$100 monthly; Interest—6%], or at a price and terms acceptable to me, and to accept a deposit thereon * * * If you procure a purchaser as defined above, I agree to pay you a commission of 10% of the selling price * * * I reserve the right to sell the property to a buyer procured by myself or through another agent and in such case no commission or other charge shall be due you, provided such sale or transfer is not made directly or indirectly to or through your prospect." This agreement was in force at all times involved.

Ralph Hargrove, the purchaser, first acquired information of defendant's property October 2, 1964, when he went to plaintiff's Poplar Bluff office to discuss his interest in buying a small farm. Defendant was in Florida and plaintiff's salesman Fogle had the key. Hargrove "had to move" from his residence "and was going to move and was changing up," and Fogle took him to defendant's farm and they inspected the house. Fogle and Hargrove next discussed defendant's farm on October 10, 1964. The third time Fogle and Har-

grove conferred about the farm was on October 14, 1964, when they again went to the property and "walked over it." During this period Fogle had shown other farms to Hargrove and quoted the price on defendant's farm as being $29,500 with $5,000 down. Hargrove inquired "if she [defendant] would take a thousand dollars down. I suggested that [he] make the offer on a paper and give me some earnest money and we would contact Mrs. McKelvy," but this was not done.

"On approximately October 15th, 1964," or "just two or three days" before the actual sale of the property, Hargrove was contacted by defendant's brother, Marvin Williams. Hargrove and Williams had been acquainted for "thirty-five or forty years, I guess," and Williams was aware of the fact Hargrove "had to move." Williams testified "On my own, absolutely * * * I was just trying to help [my sister] sell her place and [Hargrove's name just] came in mind, so I went to see him * * * and we talked about it." Williams did not show the farm to Hargrove nor accompany Hargrove when he talked with the defendant. "The terms that were worked out were directly between Mr. Hargrove and Mrs. McKelvy." Williams did, however, go with defendant and Hargrove on October 29, 1964, when they "closed the deal" for $28,500 [1] at an attorney's office.

A few days after October 14, 1964, according to Fogle, defendant arrived from Florida and went to plaintiff's office "for her key." Fogle said he then told defendant "we had a prospect and * * * was trying to get him to make us some offer." Fogle insisted he informed defendant "specifically that Mr. Ralph Hargrove was the prospect for her property." Defendant's version is somewhat different, i. e., "about three or four days [before October 29, 1964] I went [to Fogle's office] to find out before I sold the place * * * if he had any

---

1. Suit was instituted to recover a $2,-800 commission on the mistaken belief the actual sale and purchase price was $28,000 instead of $28,500 as testified to by Mr. Hargrove.

luck in selling the place, and he said no not yet * * * but he said there was somebody who would like to buy the place. He said he might buy the place, but he didn't know." Defendant denied Fogle had revealed to her the identity of his prospect and asserted "I never heard of Mr. Ralph Hargrove [until] * * * on a Sunday morning [presumably referring to October 25, 1964] and he introduced himself to me and said, I want to see your house."

Hargrove testified he neither knew defendant nor her farm "before Mr. Fogle showed it to" him, and although defendant advised him she had "a contract with Strout Realty Company concerning this property" he did not tell either defendant or her brother "that Mr. Fogle had showed [him] this farm." The buyer stated he had not made up his mind to buy defendant's farm on any terms during "any transactions" he had with Fogle and had never made a definite offer to Fogle to buy the property. Hargrove further recounted that "after the last time [he] saw Mr. Fogle about this farm * * * me and another man, we rented six hundred acres." When this case was tried on April 5, 1967, Hargrove had paid the defendant $12,000 cash on the purchase price.

"After the deal was closed" between defendant and Hargrove "and we had come back home," Fogle went to the farm and encountered Hargrove. Defendant appeared shortly thereafter and Fogle said she told him "I have sold my place to that man there * * * Mr. Hargrove * * * She said she could sell the property to anyone that she wanted to * * * She said that she was going to Florida that night * * * and there wasn't a thing I could do about it." Mrs. McKelvy admitted the encounter but denied Fogle's recitation of the conversation by declaring "I didn't tell him nothing." Hargrove moved into the house purchased from defendant on October 29, 1964.

██ Plaintiff's right to a commission is to be governed by the agreement between the parties. Rayfield v. Radford, Mo.App., 404 S.W.2d 423, 425(1); Nichols v. Pendley, Mo.App., 331 S.W.2d 673, 676, and cases there cited in note 5. Under the contract here plaintiff was entitled to a commission when it procured "a purchaser, ready, willing and able to buy" defendant's farm at the listed price and terms *or* at another price and terms acceptable to defendant. Defendant does not contend Hargrove was not ready, willing and able to buy her property. That she actually sold him the farm would prevent her from effectively denying such to be a fact. Le Compte v. Sanders, Mo. App., 229 S.W.2d 298, 302(4) and cases cited; Glassman v. Fainberg, Mo.App., 35 S.W.2d 950, 952(4); 12 Am.Jur.2d Brokers § 183 at p. 924. The reservation in the agreement which permitted defendant to sell the farm herself without liability for a commission was conditioned that any sale she might effect could not be "made directly or indirectly to or through" a prospect of the plaintiff. Hargrove was undoubtedly Fogle's and hence plaintiff's prospect. Nevertheless, the parties have not stressed this phase of the contract and we will not undertake to belabor the point. Therefore, our concern under defendant's points upon appeal, supra, is to determine if plaintiff "procured" Hargrove as the buyer and, if so, whether defendant is relieved of liability because the negotiations between Hargrove and Fogle were "broken off" before defendant consummated the sale.

██ Unquestionably Fogle's undertakings on behalf of plaintiff provided Hargrove with his first knowledge of defendant's farm and served as the sole initial stimulant to rouse Hargrove's interest as a possible purchaser. As stated in 12 C.J.S. Brokers § 93a, pp. 216–217: "After a broker has found a customer and commenced negotiations, neither the principal nor the customer can break them off, take the matter into their own hands, and defeat the broker's right to a commission by concluding the transaction without his aid; the principal cannot take advantage of the bro-

ker's work and escape payment of a commission by closing the deal himself." But a broker is not necessarily entitled to a commission on every sale made personally by the owner and in which he has an interest, for "It is the general rule that a real estate broker is entitled to recover his commission * * * if he shows himself to have been the procuring cause of the sale although the owner himself had finally consummated the sale." Barnum v. Hutchens Metal Products, Mo., 255 S.W.2d 807, 808 (1); Rogers v. McCune, Mo.App., 283 S.W. 2d 872, 877(5, 6); United Farm Agency v. Howald, Mo.App., 263 S.W.2d 889, 892 (2) and cases cited; Armco Steel Corp. v. Realty Investment Co., 8 CCA, 273 F.2d 483, 489(8). For Fogle's services to constitute the procuring cause it was necessary that his initial efforts in calling Hargrove's attention to defendant's farm set in motion a series of events which, without break in continuity, and without interruption in negotiations, eventually culminated in the sale. Real Estate Enterprises v. Collins, Mo.App., 256 S.W.2d 286, 289(3).

Hargrove's only actual contact with defendant's farm was exclusively through Fogle until about October 25, 1964, when he went alone to defendant's property and told her "I want to see your house." Until that time it was only through Fogle's efforts that Hargrove had inspected the house, walked over the property and received accurate information as to its "listed price and terms." The mere fact that during this period Hargrove did not accept the quoted price and terms or make an offer of his own, is not evidence of a hiatus either in Fogle's efforts or Hargrove's interest. The appearance of Williams, as described by both himself and Hargrove, provided nothing more than a meaningless interlude by an interloper. Defendant, if her testimony and that of Williams is to be accepted, was unaware of her brother's intermeddling. Williams had no authority to sell the property or to discuss price and terms and, in fact, did not undertake to do so. As far as the

record is concerned, the meeting of Hargrove and Williams relative to the farm was not reported to defendant and amounted to nothing more than they just "talked about it." The evidence was that Hargrove "had to move" and his principal interest was in acquiring a small farm and a residence. This need was not satisfied when Hargrove "and another man" rented six hundred acres because Hargrove immediately moved into defendant's house after the purchase was completed. This circumstance is evidence of Hargrove's continuing requirement for a residence and uninterrupted interest in defendant's property.

 If a broker is not bound to obtain a binding contract to earn a commission, he may be said to have procured a buyer if he be the means of bringing the parties together or into communication with one another. This does not mean the customer procured by the broker must be literally introduced face to face with the seller. Notice to the owner the broker has found a customer and discloses his name, entitles the broker to a commission if sale of the property by the owner is effected through such disclosure. Tyler v. Parr, 52 Mo. 249, 251, cited approvingly in Cornet & Zeibig, Inc. v. 430 Withers Realty Co., Mo. (banc), 415 S.W.2d 751, at 756; 12 C.J.S. Brokers § 91c, pp. 211–212. Fogle said he told defendant the customer he had was Hargrove. Defendant only disputes that Fogle told her the name of his prospect but was uncertain if Hargrove advised her "he had already looked at your place" by stating "I don't remember anything about that, because [Hargrove] walked in and he wanted to look at the place right quick * * * I don't remember that part of it." But whether Fogle did or did not tell defendant his customer was Hargrove is merely a circumstance to be considered in ascertaining if Fogle's efforts were the procuring cause of the sale. If they were and influenced Hargrove to go to defendant and make the purchase, then plaintiff is entitled to its commission. United Farm Agency v. Cook, Mo.

App., 283 S.W.2d 6, 12(3), and cases cited under headnote 2; Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912, 914 (4). Hargrove was the only prospective purchaser to contact defendant. She testified that "three or four days" before the actual sale was made to Hargrove, she went to Fogle's office to see if he had sold the farm *"before I sold the place."* From this it may be inferred defendant had already made a deal with Hargrove and she admits Fogle told her he then had a prospect who "might buy the place." If defendant's recollection is accurate, it is odd she did not tell Fogle of her sale and the name of her intended purchaser, and singularly strange the normal curiosity innate in all her species failed to prompt defendant to inquire of Fogle the identity of his prospect. In any event, defendant exercised little or no care to acquire the true status of the situation. "Ordinarily, a broker who has been the effective cause of a transaction is entitled to the agreed commission although the principal does not know that the broker has played a part in the negotiations * * * Having promised the broker a commission, the principal ordinarily should know that the appearance of a customer may have been caused by the broker, and to avoid liability for payment he should make inquiries of the broker." Restatement of Agency, § 448, Comment f, p. 1055; Restatement (Second) of Agency, § 448, Comment f, p. 359.

 If a broker with whom the owner lists his property for sale procures a purchaser, the owner cannot relieve himself of his obligation to pay a real estate commission by the simple expediency of selling to the purchaser at a price slightly reduced from that quoted to the broker. Le Compte v. Sanders, supra, 229 S.W.2d at 302(3), and cases cited. In the instant case the price quoted to Fogle was $29,500. The sale price was $28,500 or a reduction of but 3.4%. The terms defendant quoted to Fogle provided for a $5,000 down payment, with the balance payable at the rate of $100 per month bearing 6% interest. On the quoted terms, computing 6% interest on the unpaid balance after a $100 monthly payment on the principal, we calculate Hargrove would have paid defendant a total of $11,457.50 in the thirty months which transpired between the dates of sale and trial. Hargrove testified he had paid the defendant $12,000 in cash up to the time of trial. While we are not advised of the terms figured in the actual sale, there appears little difference between the price and terms upon which the property was listed with plaintiff and the price and terms actually agreed to. This too is a matter to be considered in pondering whether there had been any faltering or abatement in Hargrove's interest in the property from his initial introduction thereto by Fogle until actual acquisition of the farm was made.

 Defendant reminds us of two general rules often applied and acknowledged in cases of this character, to-wit: "If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed" (Taylor v. Vestal, Mo., 304 S.W.2d 820, 823–824), and, "although 'the broker may be the means of first bringing the parties together and of opening negotiations with them, yet if the negotiations are unproductive and the parties in good faith withdraw therefrom and abandon the proposed purchase and sale, a subsequent renewal of negotiations followed by a sale at a lower price does not entitle the broker to commissions, as he cannot be said to be the procuring cause of the sale.' " Cornet

& Zeibig, Inc. v. 430 Withers Realty Co., supra, 415 S.W.2d at 756. It is apparent these rules are inapplicable in this case. Hargrove did not prove to be an unwilling purchaser for he actually bought the farm on defendant's terms in less than a month from the time he was first made aware of the property through Fogle's efforts. In this situation it cannot be said Fogle's services were unproductive or to no purpose and there certainly is no evidence of any intent on the part of plaintiff to abandon its employment. Hargrove and defendant never withdrew from a proposed purchase, but, to the contrary, actually consummated the purchase and sale as originally incited by Fogle.

"And the issue as to whether a broker has been the procuring cause of sale is ordinarily one of fact to be determined by the trier of the facts." Holman v. Fincher, Mo.App., 403 S.W.2d 245, 250(4), and cases there cited in note 7; 12 Am.Jur. 2d Brokers § 190, pp. 931–933. In this court-tried suit, we are bound to "review the case upon both the law and the evidence," to afford due regard "to the opportunity of the trial court to judge of the credibility of the witnesses," and not to set the judgment aside unless it be "clearly erroneous." V.A.M.R. 73.01(d). The agreement did not obligate plaintiff by its sole effort to consummate the sale. Defendant never heard of Hargrove until after Fogle had showed him the farm twice and discussed it with him on three occasions. In about two weeks thereafter Hargrove purchased it. We cannot say the apparent finding by the trial court plaintiff (through Fogle) procured Hargrove as the purchaser of defendant's farm and that their negotiations had never broken off (even though Hargrove finally dealt directly with the owner) is clearly erroneous. Consequently, we are obliged to affirm the judgment of the trial court and its affirmance is hereby ordered.

HOGAN, P. J., and STONE, J., concur.