**SUBURBAN REALTY COMPANY, Inc.,**
**Appellant,**

**v.**

**James STURGEON, Respondent.**

**No. 25053.**

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Eugene C. Kane, W. Raleigh Gough, Kansas City, for appellant.

Harvey Burrus, Rufus Burrus, Independence, for respondent.

HOWARD, Presiding Judge.

This is a suit for a real estate commission on the sale of a house and four acres of land located on Blue River Road in Kansas City, Jackson County, Missouri. Trial to the court without a jury resulted in judgment for the defendant. We shall refer to the parties as they appeared below. The suit was originally brought against respondent James Sturgeon and his wife, but the undisputed evidence at the trial was that the wife was then dead. Therefore, we shall refer to Mr. Sturgeon as the sole respondent. We shall attempt to relate the facts in chronological order.

The appellant real estate company employed an agent by the name of Mrs. Rider who, on September 20, 1962, secured an exclusive listing of defendant's property for sale. By its terms, this listing was to be exclusive for 60 days and the defendant was obligated to pay a commission to plaintiff if sale was made within 60 days after the exclusive listing expired to any person with whom the plaintiff negotiated and whose name was disclosed to defendant during the term of the agreement.

From September 24, 1962 to and including November 11, 1962, the plaintiff displayed "For Sale" signs on the premises and advertised the premises for sale in the Kansas City Star and other area papers. On November 11, 1962, one Lester W. Odle appeared at the Sturgeon home having been sent by a different real estate agent. The defendant sent Odle to the plaintiff explaining that plaintiff had an exclusive listing. Mrs. Rider, for plaintiff, showed the property to Odle that day. On the next day Odle and his wife signed an offer to purchase the property for a price of $16,000.-00 to be paid $500.00 with the offer, $2,000.-00 on delivery of the deed and the balance of $13,500.00 to be the proceeds of a loan on the property to be purchased. In the middle of the printed form of offer, the following appears in the handwriting of Mrs. Rider: "Buyer agrees to apply and qualify for a conventional loan in the amount of $13,500 for 20 years at 6%. Buyer requests a period of time in which to complete this transaction, not to exceed six months."

On the same day, November 12, 1962, the offer was accepted by Mr. Sturgeon and his wife. On the following day, November 13, 1962, a "Missouri Real Estate Sale Contract" was prepared containing the same terms as the offer above described. It acknowledged receipt of the $500.00 and the provisions written in longhand in the offer as above quoted, were typed in this contract. This contract was signed by Mr. and Mrs. Odle and Mr. and Mrs. Sturgeon on November 13, 1962.

In fact, Mr. Odle did not pay $500.00 on the signing of the contract and did not give a check therefor. Instead, he gave plaintiff a promissory note in the amount of $500.00 due 6 months after date with no interest. Mr. Odle was indefinite as to exactly when this note was given. Mrs. Rider testified that it was given at the time of the contract. However, the note which is in evidence bears the date of November 17, 1962. This note recites that it is secured by cash surrender value of an insurance policy issued by the Kansas City Life Insurance Company. It appears that two insurance policies with an aggregate cash value in excess of $500.00 were, in fact, turned over to the plaintiff Suburban Realty. However, they were not assigned and later Mr. Odle secured the issuance of duplicate replacement policies therefor. The plaintiff did not at any time attempt to surrender or cash the insurance policies it held. This note was not negotiated and has not been paid.

Mrs. Rider testified that she explained the matter of the taking of the note to Mr. Sturgeon at the time the contract was approved by him and his wife. However, Mr. Sturgeon testified that when Mrs. Rider brought Odle's offer to him on November 12, 1962, she told him that she had received a $500.00 check from Odle but forgot to bring it with her. She offered

to go back to the office and get the check. She told Sturgeon that the check was not the same as cash but that they would know if it was good when they put it through the bank. Mr. Sturgeon further testified that no mention of the $500.00 payment was made on November 13, 1962, when the sale contract was approved by him and his wife. He testified that he was told about the note instead of cash "later in the spring" long after she (Mrs. Rider) had said she had a check. Mr. Sturgeon testified that he never saw the note before he appeared in court.

Mrs. Rider testified (by deposition, having left the employment of plaintiff and moved away from Kansas City) that the note was given by Odle instead of cash or a check because he had a buyer for some timberland in southern Missouri and would have to wait a few weeks for the cash. He did not want to take the money out of his savings account with Home Savings Association.

Mr. Odle testified that he did not sign the offer to purchase but that his wife signed both his name and her name to the offer; that he refused to sign the offer until he was assured that the plaintiff would sell his house in Kansas City North for enough money to enable him to purchase the Sturgeon house with a $13,500.00 loan. He testified that plaintiff's employees appraised his house and assured him that they could sell it for him at the price of $15,200.00. He testified that Mrs. Rider wanted 90 days to complete the deal and that he wanted 6 months to sell his house and secure the loan on the Sturgeon house. He stated that when he signed the contract to purchase it was on the basis of two contingencies: (1) that he could secure a loan of $13,500.00 on the Sturgeon house, and (2) that plaintiff would sell his house for $15,200.00. He testified that Mrs. Rider knew of these contingencies and that he was not able to buy the Sturgeon house without both. Odle listed his house for sale with plaintiff contemporaneously with

signing the contract to buy the Sturgeon property.

Mr. Sturgeon testified that when the offer (and the sale contract) was submitted to him, he objected to waiting 6 months to close the deal and Mrs. Rider told him that Odle could qualify for the loan within a week or ten days or he could forget about it and it would not take long to sell Odle's property, so he would not be required to tie up his property for 6 months. She said that Odle wanted time to sell his other property to be able to buy the Sturgeon property.

After the contract was signed by the parties it was sent to plaintiff's main office where inquiry was made to 6 or 7 lending agencies in an attempt to secure a loan for Odle in the amount of $13,500.00. Some notes on scraps of paper were introduced in evidence and from these one Barbara Warren, an employee of plaintiff, testified that she contacted First Federal Savings and Loan Association on November 20, 1962, and they refused to make a loan on the property. Contact was also made with Sentinel Savings and Loan, Metropolitan Savings and Loan, and others who refused the loan. On November 21, 1962, she contacted Groves Brothers who would only make a loan in the amount of $10,000.00. The notes indicate that Capitol Federal was contacted on November 21, 1962 but she testified the contact was January 9, 1963. In any event, an application was made to Home Savings and Loan Association for a loan of $13,500.00 on January 10, 1963. Barbara Warren accompanied Odle to Home Savings on that date to make this application.

In this connection, Mr. Sturgeon testified that about a month and a half after the contract was signed (this would be late in December, 1962 or early in January, 1963), he called Mrs. Rider to inquire about the sale of his property and was told that Odle could not get the $13,500.00 loan and that this was holding up the consummation of the sale. Mrs. Sturgeon then contacted

Home Savings and they reported that they were then making loans. She relayed this message to Mrs. Rider who "got hold of someone" and they took Mr. Odle to Home Savings to make application for the loan. This was done on January 10, 1963, and on January 22, 1963, the records of Home Savings indicate that a loan in the amount of only $11,500.00 was approved. The Home Savings file does not contain a copy of the contract of November 13, 1962.

Mr. Sturgeon testified that Mrs. Rider advised him that the most Home Savings would loan was $11,500.00; that they would not make the $13,500.00 loan. In response to this, Mr. Sturgeon offered to carry a $2,000.00 second mortgage and thereafter, Mrs. Rider reported to Mr. Sturgeon that Odle had signed the papers for a first mortgage loan of $11,500.00 and for the second mortgage loan from Mr. Sturgeon in the amount of $2,000.00. She advised that all that Mr. Sturgeon had to do was wait for the 6 month time to expire and close the deal.

It appears that plaintiff, its agents and employees, did nothing further to consummate this sale. Mr. Sturgeon testified that the plaintiff never produced the proceeds from the $11,500.00 loan or the papers for the $2,000.00 second mortgage he had offered to carry.

Early in May, 1963 (approximately the end of the 6 month period mentioned in the sale contract), Mr. Sturgeon called the plaintiff and talked to the elder Mr. Kuhn, who was president of plaintiff. Mr. Sturgeon was advised that his house was not sold, to which he replied that he would come down and get his half of the $500.00 earnest money, the receipt of which was acknowledged in the contract of sale. Mr. Sturgeon was advised that plaintiff did not have $500.00 and never had had it and "that was it."

Mr. Sturgeon then for the first time called Mr. Odle to inquire where the earnest money was and Mr. Odle explained. He also advised that he had never been approached as to the $2,000.00 second mortgage to be carried by Sturgeon. Odle explained that without the $13,500.00 loan and the sale of his present house he could not afford to buy the Sturgeon property. He explained that he signed the contract on the assurances of Mrs. Rider and her fellow employees that they could sell his house and that he could secure $2,000.00 for his equity to use as the $2,000.00 down payment and that they could get him a $13,500.00 loan for the balance of the purchase price. It was Mr. Odle's position that since neither of these events had occurred he could not, and was not obligated to, consummate the transaction. Mr. Sturgeon testified that he then secured information from Odle as to how much the loan was on his house and was considering buying the Odle house for enough to pay off the loan and to enable Odle to pay the down payment on the Sturgeon house. He testified that he was just contemplating "trading dollars" in the hopes that someone would come along and take the Odle house off his hands for the money he had in it without any profit. Since this house was listed for sale with plaintiff, Mr. Sturgeon again contacted the elder Mr. Kuhn who first encouraged him to inspect the Odle house and make an offer and then refused to carry through the sale unless plaintiff was paid a commission on the purchase of the Odle house as well as on the sale of the Sturgeon house. Mr. Sturgeon refused to pay two commissions. Mr. Kuhn then advised Sturgeon that Odle could not purchase .the Sturgeon house because he could not get his loan and stated that he (Kuhn) was through. "This was the end of it."

Sturgeon and Odle then together went to see a lawyer who made demand on plaintiff for the earnest money and for the return of Odle's note. The earnest money was not forthcoming and the note and insurance policies were not returned. This was after plaintiff had demanded payment of the note from Odle who refused because the plaintiff had not lived up to its bargain with him

(to sell his house and secure the loan). Odle testified that he was always willing to buy the Sturgeon house just as soon as plaintiff sold his house and secured the $13,-500.00 loan but that without this sale and the loan, he could not buy the Sturgeon house.

After the 6 month period mentioned in the sales contract had expired, Odle listed his house with another real estate broker and it was sold within two days. He then advised Sturgeon through the attorney they had both consulted that he was still interested in buying the Sturgeon house. They reached an agreement for the sale of the house which is embodied in a contract found in the Home Savings loan file dated the _____ day of June, 1963 (the year is indistinct on the contract but the testimony of the witness from Home Savings was that it was executed in 1963). This contract provided for a sale price of $15,200.00; $250.00 to be paid on the signing of the contract, $1,750.00 cash on delivery of the deed. It is provided that the sale is subject to buyers applying for and obtaining a first mortage loan for at least $11,500.00, and a second mortage in the amount of $1,750.00. Mr. Odle testified that he made a new application to Home Savings for a loan in the amount of $11,500.00. The records from Home Savings do not show a new application. They do show the original application on January 10, 1963, which was approved for $11,500.00 only on January 22, 1963, and that the loan was, in fact, made on June 24, 1963. It further appears in evidence that a warranty deed from Mr. and Mrs. Sturgeon to Mr. and Mrs. Odle covering this property was executed under date of June 20, 1963, and recorded June 25, 1963.

It is the contention of plaintiff that it earned a real estate commission in the amount of $912.00, being 6% of the sale price of $15,200.00 by securing Mr. and Mrs. Odle as purchasers for the Sturgeon property "ready, willing and able" to buy. It is defendant's contention that the Odles were not ready, willing and able to buy and

that the contract secured by plaintiff was a conditional contract; that the conditions were never complied with and that plaintiff was not the procuring cause of the sale of the property on June 20, 1963.

In this court tried case the review upon appeal is upon both the law and the evidence as in suits of an equitable nature. While we are authorized to make our own findings of fact and conclusions of law, we should and do defer to the opportunity of the trial judge to observe the witnesses and pass upon their credibility. We will not set aside the judgment below unless it is clearly erroneous. Civil Rule 73.01(d), V.A.M.R. The appellant real estate company first contends that upon the signing of a binding contract of sale between the Odles and the Sturgeons it became entitled to a real estate commission as the procuring cause of the sale unless the contract was conditional. We agree with this basic contention and further agree, as stated in appellant's brief, that "the matter comes down to the question whether the contract was 'conditional' and whether the condition was met or waived." As heretofore pointed out, the following language was inserted by Mrs. Rider in longhand in the printed form of the original offer to purchase signed by Odle and accepted by Sturgeon. It was also typed into the printed form of the sale contract:

"Buyer agrees to apply and qualify for a conventional loan in the amount of $13,500 for 20 years at 6%. Buyer requests a period of time in which to complete this transaction, not to exceed six months."

While this language does not expressly use the word "condition", it is apparent that Odle intended and that Mrs. Rider and Sturgeon understood that his obligation under the contract was conditioned on his securing the $13,500.00 loan. This language is peculiarly inappropriate and unsuited for insertion into a contract. It is another example of the mischief that results when unqualified people attempt to draft contract provisions. The further language

concerning the 6 months time within which to complete the transaction is even more inappropriate. At the very least, this language would create an ambiguity subject to being explained by parol evidence. However, on the face of the contract itself, this language must have been inserted for a purpose. The only rational purpose would be that of conditioning the obligation under the contract.

The testimony is uncontradicted that when the offer was presented to Mr. Sturgeon he objected to tying up his property for a period of six months. Mrs. Rider assured him that Odle could qualify for a loan within a matter of a week or ten days; otherwise "we will forget about it." She also informed Sturgeon that Mr. Odle had other property which he was listing for sale with plaintiff and that the 6 month period was to permit him adequate time to dispose of the property. She assured him that only a much shorter time would be required. It was on the basis of this assurance that Sturgeon accepted Odle's offer. As it turned out, these assurances were not well-founded and Sturgeon was obligated to and did hold his property for six months.

While the above language is not as explicit as that contained in the contract under consideration in Doerflinger Realty Company v. Maserang, Mo.App., 311 S.W. 2d 123, we agree with the finding of the trial court that it was the intention of the parties in entering into this contract that the obligations thereof were conditioned on Odle securing a $13,500.00 loan. We therefore conclude that the contract of sale was a conditional contract and unless and until such condition was complied with and the contract became a binding obligation upon both parties, the plaintiff had not earned its real estate commission; this because it had not, in fact, secured a buyer who was ready, willing and able to buy the property. From the evidence, the conclusion cannot be escaped that Odle was neither willing nor able to buy the property unless and until the condition in the contract

was complied with. See also Collins v. Roth, Mo.App., 224 S.W.2d 129.

Appellant next contends that even if the contract was conditional, such condition was waived by the parties, both when Sturgeon offered to accept a $2,000.00 second mortgage and when the parties entered into a new contract in June when the property was ultimately sold. In connection with the argument, appellant contends that the June contract could not be considered "an entirely new deal."

As to defendant's offer to accept a $2,000.00 second mortgage, this offer was made to Mrs. Rider for communication to Odle after Sturgeon had been informed that the $13,500.00 loan could not be secured. Plaintiff offered no evidence on this subject and defendant's evidence is that this offer was never communicated to Odle. This could not constitute a waiver of the condition because under no stretch of the imagination could we find that Odle waived the condition inserted in the contract for his protection by accepting the counter offer from Mr. Sturgeon when he never even had knowledge of such offer.

As to the effect of the June contract which did result in the ultimate sale, we must examine the activities of the parties. As heretofore set out, plaintiff attempted to peddle Odle's loan to several lending agencies in November soon after the original contract was signed. It was unsuccessful in securing a commitment for a loan in any amount above $10,000.00. When Sturgeon inquired as to the progress about the first of the year and was advised of this, his wife was instrumental in sending the parties to Home Savings Association which would only approve a loan in the amount of $11,500.00. This did not comply with the condition of the contract and nothing further was done. The inference is inescapable that plaintiff washed its hands of the transaction and did nothing further. At approximately the end of the 6 month period mentioned in the contract, Sturgeon

asked for his half of the earnest money and was informed that there was no money. Even when Sturgeon attempted to consummate the sale by buying Odle's house, plaintiff stymied such an arrangement by demanding two commissions. It was only after Odle had listed his house with another broker and it was immediately sold that he contacted Sturgeon and that they entered into the new contract in June of 1963. Odle either made a new application for a loan (as he testified) or he reactivated the dormant loan application of January, 1963 which had been approved for $11,500.00. Although appellant affirms that this cannot be considered as an "entirely new transaction", our examination of the evidence convinces us that it was. This is not a case where the parties attempt to run around behind the real estate agent's back and beat him out of his commission. It is apparent that Sturgeon held his house for the full 6 months required by the contract procured by plaintiff, being ready to complete the sale at any time. Odle testified that he was ready to buy the Sturgeon house at any time plaintiff sold his (Odle's) house and he could secure a sufficient loan to finance the balance of the price. It was not until after Odle had listed his house with another broker and it sold within two days and he considered he was able to buy the Sturgeon house that he contacted defendant through the attorney and negotiated the June contract.

Since plaintiff had obviously abandoned this transaction it cannot now claim a commission through the fortuitous circumstances that the two parties did get together and negotiate a new contract in spite of, not because of, the activities of plaintiff. In such circumstance, the real estate agent is not entitled to a commission because he is not the procuring cause of the sale. See such cases as Cornet & Zeibig, Inc. v. 480 Withers Realty Co., Mo., 415 S.W.2d 751; Taylor v. Vestal, Mo., 304 S.W.2d 820; and E. A. Strout Realty Agency, Inc. v. McKelvy, Mo.App., 424 S.W.2d 98.

We therefore concur in the finding of the trial court that the contract of sale negotiated by plaintiff acting through its employee, Mrs. Rider, was a conditional contract and that the conditions were never fulfilled; that absent the fulfillment of such conditions, Odle was neither a willing nor an able buyer and that the ultimate sale was the result of a distinct and separate transaction between the parties and that plaintiff was not the procuring cause of such ultimate sale. It, therefore, follows that plaintiff is not entitled to a real estate commission on this sale and the judgment of the trial court is affirmed.

All concur.